IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2016

IN RE S.P . ET AL.

Appeal from the Juvenile Court for Rutherford County
No. TC2520T        Donna Scott Davenport, Judge

No. M2016-00708-COA-R3-PT – Filed January 25, 2017

In this termination of parental rights case, the Department of Children's Services filed a petition to terminate the rights of S.J.C.P. (Mother) with respect to her children, S.D.P. and C.D.P.[1] The trial court found clear and convincing evidence of four grounds supporting termination. By the same quantum of proof, the trial court held that termination of Mother's rights is in the best interest of the children. Mother appeals. We modify the trial court's judgment. As modified, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Carl Moore, Murfreesboro, Tennessee, for appellant, S.J.C.P.

Herbert H. Slatery III, Attorney General and Reporter, and Rachel E. Buckley, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.**

The children were born in 2004 and 2008 respectively. In May 2013, Mother ceased living with Father. Thereafter, they shared responsibility for the children. Mother

---

[1] In the same petition, DCS also sought to terminate the parental rights of C.W.P. (Father). The trial court terminated those rights in a final judgment entered March 30, 2016. Father has not appealed.

lived out of her car or with friends. Father was evicted from his home. Later, the children lived with their maternal grandmother and her husband.

In August 2014, DCS received a referral that the grandparents had physically and psychologicially abused the children. Due to Mother's drug use and her failure to provide housing and basic necessities for the children, DCS filed a petition to declare the children dependent and neglected and for emergency temporary legal custody. The trial court entered a protective custudy order, awarding custody of the children to DCS. The children have remained in foster care since their placement on August 27, 2014.

In January 2015, the trial court entered an order, adjudicating the children dependent and neglected. The court found that Mother had abandoned the children by (1) failing to provide for the care and necessities of the children, (2) failing to provide a residence for the children, and (3) failing to ensure that the children had a proper caretaker.

On August 18, 2015, DCS filed a petition to terminate Mother's parental rights. DCS alleged the following grounds for termination: (1) abandonment by failure to visit pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i), -102(1)(C), and -102(1)(E); (2) abandonment by failure to provide a suitable home pursuant to Tenn Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii); (3) substantial noncompliance with permanency plan pursuant to Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2); and 4) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). DCS also asserted that termination of Mother's rights is in the best interest of the children.

On March 30, 2016, the trial court entered a final decree of full guardianship terminating Mother's rights. The trial court found clear and convincing evidence supporting each of the four grounds alleged by DCS. The trial court also found by the same standard of proof that termination is in the children's best interest. Mother appeals.

## II.

Mother filed a notice of appeal raising the following issues, as taken verbatim from her brief:

> Whether the [c]ourt below erred in finding abandonment [by] failure to visit.
>
> Whether the [c]ourt below erred in finding abandonment by failure to provide a suitable home.
>
> Whether the [c]ourt below erred in finding substantial noncompliance with the Permanency Plan(s).

2

Whether the [c]ourt below erred in finding persistence of conditions.

Whether the [c]ourt below erred in finding that termination is in the children's best interest.

(Paragraph numbering in original omitted.)

## III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

3

We are required to review all of the trial court's findings with respect to grounds and best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

The Supreme Court has recently delineated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

This court has previously stated that,

> [t]he ultimate goal of every proceeding involving the care and custody of a child is to ascertain and promote the child's best interests. However, as important as these interests are, they do not dominate every phase of a termination of parental rights proceeding. The best interests of the child do not become the paramount consideration until the trial court has

4

determined that the parent is unfit based on clear and convincing evidence of one or more of the grounds for termination listed in Tenn. Code Ann. § 36-1-113(g).

*In re Audrey S.*, 182 S.W.3d at 877.

## IV.

## A.

The trial court made the following findings regarding Mother's willful failure to visit the children:

> The Court finds by clear and convincing evidence that Mother did not visit the children at all within the four months preceding the filing of the petition. . . . Mother knew how to contact [DCS]; and . . . [DCS] stood ready, willing, and able to help her to facilitate any type of relationship with the children. Mother further knew that she had some drug issues and that she had to pass drug screens prior to visiting with the children. . . . The Court finds that Mother had plenty of time to present herself to [DCS] to submit to drug screens and to be able to visit with the children. . . . Mother testified that she had transportation issues, but because Mother waited until a few hours prior to scheduled visits, [DCS] was unable to accommodate Mother by providing transportation. . . . Mother failed to consistently maintain phone contact with her children. Further, the Court finds by clear and convincing evidence that Mother's voice mail was always full, preventing both the children and [DCS] from leaving messages. . . . [T]he Court therefore finds by clear and convincing evidence that Mother willfully and intentionally abandoned both of these children for failure to visit or, even engage in a token amount of visitation with her children.

On this ground, we hold that the evidence does not preponderate against the trial court's finding that Mother willfully failed to visit the children. Tenn. Code Ann. § 36-113(g)(1) authorizes a court to terminate parental rights when a parent abandons the child. In the context of the ground under discussion, abandonment is defined as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a . . . pleading to terminate the parental rights of the parent . . . that the parent . . . ha[s] willfully

5

> failed to visit . . . the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). "'[W]illfully failed to visit' means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation[.]" Tenn. Code Ann. § 36-1-102(1)(E). In this case, DCS filed the petition to terminate Mother's rights on August 18, 2015.[2] Accordingly, the relevant four month period we must analyze is from April 18, 2015 to August 17, 2015.

The trial court found that Mother had not visited the children during the relevant four-month period. In her brief, Mother points out that she could only visit the children if she passed random drug screens. She asserts that the choice to visit was not hers alone because "[s]he could only visit if DCS called her in for a drug screen and she passed." Mother argues that DCS only called her once a month. She argues, therefore, that her failure to visit was not willful.

Mother's position is disingenuous. Mother's assertion that DCS failed to get in touch with her for drug screens overlooks the fact that this was not because of any fault on the part of the department. The record does not demonstrate that DCS frustrated Mother's efforts to visit the children in any way or that Mother actively sought to visit the children but encountered barriers. *Cf. **In re Adoption of A.M.H.,** 215 S.W.3d 793, 810 (Tenn. 2013) (holding that "[w]here . . . the parents' visits with their children have resulted in enmity between the parties and where the parents redirect their efforts at maintaining a parent-child relationship to the courts the evidence does not support a 'willful failure to visit' as a ground for abandonment"); **In re Chelbie F.,** No. M2006-01889-COA-R3-PT, 2007 WL 124252, at *6 (Tenn. Ct. App. 2007, filed Apr. 27, 2007) (holding that the father's "pursuit of a judicial remedy is inconsistent with a finding that he willfully failed to . . . visit [the child]").

The evidence reflects that DCS encountered Mother-created barriers in contacting her and scheduling her drug screens. It is clear that DCS tried to schedule drugs screens in an effort to facilitate Mother's visitation with the children. DCS contacted Mother at least once a month to set up a drug screen so she could visit the children. These calls often went unanswered. DCS was hampered in its efforts because Mother's voicemail was repeatedly full. Mother did not put forth the effort to make herself available for the drug screens so as to enable her visitation with the children. Mother did not maintain open communication with DCS to facilitate the process and allow her to visit her children. Consequently, Mother failed to visit the children during the relevant time period of April 18, 2015 to August 17, 2015. This evidence demonstrates a willful failure to visit the children during the relevant timeframe. We hold, as a matter of law, that this ground is shown by clear and convincing evidence.

---

[2] In her brief, Mother argues that DCS filed the petition to terminate on August 29, 2015 rather than August 18, 2015. The record is clear that the termination petition was filed on August 18, 2015.

6

**B.**

On the ground of Mother's failure to provide a suitable home for the children, the trial court held that there was clear and convincing evidence to terminate Mother's rights on this ground. The trial court found the following:

> The Court finds by clear and convincing evidence that, due to Mother's refusal to open her home for inspection by [DCS], Mother's failure to provide sufficient information and background to [DCS] to determine whether [her roommate] is a suitable person to have her children around . . . due to his residing in the home, and that the lease and utilities are solely in [her Roommate's] name, that Mother has abandoned the children based upon Mother's failure to provide a suitable home for the children.

Tenn. Code Ann. 36-1-113(g)(1) allows a court to terminate parental rights due to abandonment when:

> The child has been removed from the home of the parent . . . as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child . . . and for a period of four (4) months following the removal, the department . . . has made reasonable efforts to assist the parent . . . to establish a suitable home for the child, but that the parent . . . ha[s] made no reasonable efforts to provide a suitable home . . . .

Tenn. Code Ann. § 36-1-102(1)(A)(ii). On appeal, DCS concedes, as taken verbatim from its brief, that "the record does not illuminate the efforts the Department made during the specific four-month period clearly and convincingly." We agree. The trial court's order relies upon Mother's lack of efforts to establish a suitable home, but the order, however, does not address any efforts by DCS to assist Mother in establishing a suitable home. The record is devoid of the facts necessary to terminate Mother's rights on this ground. We hold, as a matter of law, that there is not clear and convincing evidence to support termination of Mother's rights due to a failure to establish a suitable home. We modify the trial court's order to delete termination of Mother's rights on the ground of failure to establish a suitable home.

**C.**

The trial court found clear and convincing evidence to terminate Mother's rights due to her substantial noncompliance with permanency plans:

7

The Court finds by clear and convincing evidence that the responsibilities for Mother were reasonably related to remedying the reasons for foster care. . . . The Court finds that Mother has participated in the development of the Permanency Plans, and knew what the plans consisted of and required of Mother. Mother knew what consequences she would face if she failed to carry out her responsibilities included in the Permanency Plans as the criteria for termination of parental rights was explained to Mother on numerous occasions. . . . The Court finds by clear and convincing evidence that, although Mother did complete parenting classes, Mother has been unable to demonstrate that she learn[ed] sufficient parenting skills to adequately parent the children because Mother has failed to visit the children with the exception of two visits in the eighteen month period the children have been in foster care. . . . Mother has failed to provide a suitable home for the children. The Court further finds by clear and convincing evidence that Mother has not provided consistent proof of income sufficient to support the children; has not provided a childcare plan to [DCS] or this Court; has not provided a transportation plan to [DCS] or this Court; has not visited with the children except as set out hereinabove; and has failed to consistently exercise phone calls with the children despite the calls being specifically scheduled around Mother's work schedule. . . . [O]ne of Mother's requirements was to resolve all legal issues and not accrue any new criminal charges. The Court finds by clear and convincing evidence that Mother was arrested for failure to appear, driving on a suspended license, theft, and possession of Xanax, all since the children have been placed into foster care. Therefore, based upon the foregoing, the Court finds by clear and convincing evidence that the third ground for termination of Mother's parental rights exists in that Mother failed to substantially comply with the Permanency Plans.

The evidence does not preponderate against the trial court's finding that grounds for termination exist due to mother's substantial noncompliance with permanency plans. Tenn. Code Ann. § 36-1-113(g)(2) allows a court to terminate parental rights when "[t]here has been substantial noncompliance by the parent . . . with the statement of responsibilities in a permanency plan[.]"

In her brief, Mother asserts that "the permanency plan(s) in this case lack a statement of responsibilities, but do include 'description of concern,' 'desired outcomes,' and 'Action Steps[.']" She argues that [b]ecause there is no statement of responsibilities, this Court should vacate the [trial court's] finding that sufficient evidence exists to support this ground for termination."

We are not persuaded by Mother's argument. We have stated the following regarding the statement of responsibilities in a permanency plan:

> [T]he statement of responsibilities serves a substantive purpose. If the parent is required to comply with the permanency plan, then the permanency plan should clearly communicate to the parent: this is what you must do to regain custody of your child. That is the purpose of the parent's statement of responsibilities.

*In re Abigail F.K.,* No. E2012-00016-COA-R3-JV, 2012 WL 4038526, at * (Tenn. Ct. App., filed Sept. 14, 2012).

In this case, DCS created three permanency plans for Mother. These plans are substantially the same, and each of the permanency plans clearly states Mother's responsibilities. There are sections containing a statement of responsibilities describing what Mother must do to comply with the plan. In each of the plans, Mother was responsible for the following: 1) completing a clinical intake with A&D, parenting, and anger management components and following all recommendations; 2) participating in eight weeks of parenting classes; 3) following the guidelines of her probation and not incurring any new charges; 4) providing DCS with proof of a legal means of income to support the children; 5) providing proof of housing to DCS; 6) presenting any roommates to DCS to be entered into the permanency plan; and 7) visiting with the children on a regular basis.

The record demonstrates that Mother failed to complete many of the tasks in the permanency plans. Mother failed to complete the clinical intake recommendations, only doing so after DCS filed the petition to terminate Mother's rights. Mother also failed to complete the required eight weeks of parenting classes, again only after the termination petition was filed. Mother did not follow her probation guidelines, but rather incurred additional legal charges. She has not provided proof of obtaining a legal means of income to support the children. Mother has also failed to provide proof of housing and has refused to open her home to DCS for inspection. In addition to refusing to provide housing information to DCS, Mother has failed to present her roommate to DCS. As discussed above, Mother has failed to visit the children. The requirements in the permanency plans were important for remedying the conditions that led to the placement of the children in foster care. Mother failed to comply with the provisions of the

9

permanency plans that would enable the children to live in Mother's home. It is clear that Mother failed to substantially comply with the permanency plans.

Mother also argues in her brief that "the tasks on the permanency plan itself are unreasonable in light of the extraordinary number of tasks . . . in the initial permanency plan . . . and the fact that DCS had never met with Mother when the plan was created." She argues that the "tasks were not created to remedy a home situation" and that "several of the action steps for Mother require some sort of action from DCS as a prerequisite."

We do not agree. The number of tasks in these plans do not make the permanency plan unreasonable. The tasks in each plan are aimed at helping Mother make the changes necessary for the children to remain with her. Each task was important for remedying the problems that necessitated foster care in the first place and achieving permanency for the children. Moreover, the fact that Mother believes that there were an extraordinary number of tasks in the permanency plan does not relieve her of her responsibility to comply with the tasks. She still must substantially comply with the requirements to avoid termination of her rights on this ground.

Mother's argument regarding the number of tasks in the plans is misplaced. We do not review whether Mother complied with every responsibility in the permanency plans. Rather, we look at whether there was substantial noncompliance with the plans. Our Supreme Court has stated that "[i]n the context of the requirements of a permanency plan, the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to the requirement." *In re Valentine,* 79 S.W.3d 539, 548 (Tenn. 2002). Mother's argument that there are an unreasonable number of tasks in the permanency plans fails to address whether she substantially complied with the plans. In our view, Mother's noncompliance is substantial due to the fact that she failed to complete numerous requirements that are important for remedying the situation that led to the removal of the children.

We hold, as a matter of law, that the evidence shows clearly and convincingly that Mother failed to substantially comply with the permanency plans.

**D.**

In regard to persistence of conditions, the trial court held that there is clear and convincing evidence to terminate Mother's rights on this ground. Tenn. Code Ann. § 36-1-113(g)(3) authorizes a court to terminate parental rights when:

> *The child has been removed from the home of the parent . . . by order of a court* for a period of six (6) months and:
> (A) The conditions that led to the child's removal . . . still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and

(C) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

(Emphasis added.) On appeal, DCS concedes that the children were living with the grandparents at the time they were removed. DCS also concedes that because the children were not removed from Mother's home, the ground of persistence of conditions is not applicable. Based on the plain language of Tenn. Code Ann. § 36-1-113(g)(3), we agree. "[T]his Court has . . . held that the ground of persistence of conditions leading to the removal of the child is not applicable when the child was not removed from the home of the parent whose rights are at issue." *In re Jayden B.T.*, No. E2014-00715-COA-R3-PT, 2015 WL 3876573, at *10 (Tenn. Ct. App., filed June 23, 2015). *See also In re K.M.K.*, No. E2014-00471-COA-R3-PT, 2015 WL 866730, at *7 (Tenn. Ct. App., filed Apr. 1, 2013) (holding that "[t]he statute requires proof that the children were removed from the home of the parent whose parental rights are sought to be terminated"); *In re Maria B.S.*, No 2012-01295-COA-R3-PT, 2013 WL 1304616, at *11 (Tenn. Ct. App., filed Apr. 1, 2013) (holding that the ground of persistence of conditions was inapplicable to Father "without removal from [F]ather's home"). We hold that the evidence preponderates against the trial court's finding that the ground of persistence of conditions exists to terminate Mother's parental rights. We modify the trial court's order to delete termination based on the ground of persistence of conditions.

## V.

## A.

Since we have found grounds to terminate Mother's rights, we now focus on whether termination is in the children's best interest. When considering the issue of "best interest," we are guided by the following statutory factors set forth in Tenn. Code Ann. § 36-1-113(i), which provides:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;

(2)  Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)  Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)  Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)  The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)  Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)  Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)  Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)  Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)).  In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing

12

*White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

**B.**

The trial court found as follows when considering the best interest of the children:

> [Mother] has [not] made an adjustment of circumstance, conduct, or conditions that would make it safe or in the children's best interest to return to [Mother]. . . . [T]here is no time that is going to be effective to have that lasting adjustment based upon [Mother's] minimal efforts throughout the 18 months children have been in custody.
>
> [Mother] has [not] maintained regular visitation and/or contact with the children. Mother's scheduled phone calls to the children were sporadic at best.
>
> There is no meaningful relationship between Mother and the children . . . .
>
> [Mother] has [not] paid child support pursuant to the guidelines.
>
> Changing caregivers and physical environment . . . would be emotionally and psychologically harmful to the children . . . [who] are happy and thriving in the foster home.
>
> [Mother has] shown little or no interest in the welfare of the children.
>
> The children have adjusted well and have established a strong bond with their foster parents, who wish to adopt them.

Based upon these findings, the trial court found that DCS had proven, by clear and convincing evidence, that termination of Mother's rights is in the best interest of the children. The evidence does not preponderate against the trial court's factual findings.

The record demonstrates that Mother has failed to make the adjustment to her circumstances, conduct, or conditions that would make it safe for the children to be in her home. DCS has made efforts to assist Mother in making the changes that would allow the children to return to her, but Mother has not made efforts of her own. Mother has no relationship with the children because she failed to visit them following their placement in foster care. Mother has not shown that she has a safe and suitable household for the

13

children. It would likely have a negative effect on the children mentally and emotionally for them to change caretakers and physical environment because they have developed a relationship with their foster family.

With these facts in mind, we conclude, as a matter of law, that there is clear and convincing evidence that termination of Mother's parental rights is in the best interest of the children.

## VII.

The judgment of the trial court is affirmed as modified. We modify the trial court's judgment so as to vacate so much of that judgment as holds that termination was proper under (1) Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii), failure to establish a suitable home and under (2) Tenn. Code Ann. § 36-1-113(g)(3), persistence of conditions. We affirm the trial court's judgment terminating Mother's parental rights on the grounds of willful failure to visit and substantial noncompliance with the permanency plans. The costs on appeal are assessed to the appellant, S.J.C.P. This case is remanded for enforcement of the trial court's judgment, as modified, and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE

14